And come again. Good morning, I mean good afternoon everyone. All right. Appeal 19-1529 Linda Walden v. Wal-Mart. And it's Mr. Ayers. Good morning. Good afternoon, Mr. Ayers. My name is James Ayers. I represent Linda Walden and her husband. I know you're familiar with the I think I would like to start with basically the order in my brief, which is the inadequacy of the evidence of Wal-Mart in the summary judgment motion. In Indiana practice, it is very definite and precise that the affidavit given to support a summary judgment must be based on personal knowledge and that the evidence supported or argued must be something that would be admissible. The Wal-Mart evidence in this case doesn't meet any of those. The primary source of the trial judge's narrative, which comes out in favor of Wal-Mart, is based upon a set of interrogatories answered by Wal-Mart in which it claimed we have this Wal-Mart wonderful system of making sure that things are cleaned up, there's regular checking and all that. And that set of interrogatories is not admissible. There is an affidavit with that set of interrogatories to authenticate it, which reads as follows. Forgive me for interrupting, but what is the plaintiff's best evidence in the record? I'm sorry? What is the plaintiff's best evidence in the record that Wal-Mart was aware of the presence of this hazard? I asked because it is the plaintiff's burden to establish that element of the case. And I didn't see the plaintiff cite any record evidence regarding the defendant's actual or constructive notice of the hazard. Could I just finish this point? Sure. The Wal-Mart's argument and the judge's judgment are based upon the interrogatories. The verification says by Amanda Miller, while I do not have personal knowledge of all the facts set forth in these answers, the information contained have been collected and made available to me by others. And the responses are true and accurate to the best of my knowledge and belief based upon the information made available to me, obviously by others. So the interrogatory answers are not admissible. They're not good evidence. And the affidavit that purports to authorize them is absolutely not a proper Trial Rule 56 affidavit. The same goes for the other two affidavits because they do not actually address the issues. On your question, the best proof is the photograph. When Linda Walden fell and her back was broken, she looked to her right and she saw all this debris underneath the adjoining places for the hangers of the material. So she's lying there on the floor. Her husband comes over. They get her moving around. Here are all these things on the floor. That's the photograph. I know, but here's the problem with the photographs. One was undated. Say again? One of the photographs was undated and the other was dated 11 days after the fall. The photograph was not dated. The photographs are Wal-Mart photographs. They were taken on the day of. They were delivered to us in discovery by Wal-Mart as the day of activities. Now, the photograph doesn't say it's not dated like it was on the film. And you can see in the first photograph that that's similar. We don't have all this stuff in the record. But the production by Wal-Mart included photographs of the entire store from overhead. And it also included those two site of the accident or site of the fall photographs. And the photograph that I'm referring to, which is photograph number two, is Wal-Mart's photograph produced to us as representing the conditions of time. And it is absolutely identified by Mrs. Walden from her testimony, which is in the record. You are saying that Wal-Mart sent an undated photograph and one that was taken 11 days later? I don't think the 11 day later is a date stamp on the photograph. I think it's a transmission stamp. Whatever it was, Wal-Mart sent it. And regardless of that, the evidence is that that's what it looked like. I mean, she fell, she saw these things, she testified to it, she described it, she identified the photograph as this is what it was. As I was lying there on the floor looking around, that's what I saw. But what then is the foundation showing that the photos depicted conditions at the time of the fall? Her testimony. Her testimony. She's lying there on the floor, she saw what those photographs show, and she testified to it. I don't know how else you authenticate something unless you actually took the photograph, and she was in no position to do that. Wal-Mart disclosed this to us, and we presented it to the court. Would you like to reserve the rest of your time? Yeah. Why don't you reserve the rest of your time? Okay. Good morning, Ms. Strawbridge. Good afternoon, Your Honors. Good afternoon. And may it please the court. I will try to keep my remarks brief because I think the court has already done an excellent job of highlighting the deficiencies in the plaintiff's case. I will address a couple of the points that the court made before I move on to my remarks regarding notice, if that's all right. First, the Waldens have alleged here today that the district court based the majority of their opinion on Wal-Mart's answers to interrogatories. On a what? On Wal-Mart's answers to interrogatories, Your Honor. Right. He made that argument here today. As I was sitting there, I looked through the district court's entry. I don't believe the answers to interrogatories were mentioned once. I did include them as an exhibit to Wal-Mart's motion for summary judgment, solely to prove that the identities of the witnesses who later completed these affidavits were submitted and provided to plaintiffs almost a year before the expiration of the discovery deadline. To the point of the verification of the interrogatories, I think Rule 33 is pretty clear that a corporate entity may appoint an agent to verify those interrogatories. Of course, the agent of a corporation such as Wal-Mart is not going to have personal knowledge of each and every fact that's included within the answers to interrogatories, but they are signing on behalf of Wal-Mart. Wal-Mart stands behind those responses as the information available. Can we get to those photos? Absolutely, Your Honor. That was my next point. The photographs were produced to plaintiffs in defendants' response to their request for production. To disagree with what counsel just argued here today, they were not produced and were never submitted as being taken on the date of the accident, which was January 1, 2017. They were produced in response to a request for production, which unfortunately is not in the record before the court, but I'll submit to you that it was in response to a request seeking essentially Wal-Mart's entire investigative file regarding this accident. We submitted the photographs along with several other documents that were relevant to that response. One photograph, as Your Honor pointed out, was undated. Another photograph was dated January 12, 2017. There has never been any effort by the plaintiffs to establish more of a foundation for those photographs than you've heard here today. And as I pointed out in my brief, unfortunately the date stamp is missing from the photograph that was provided to the court by the plaintiffs. But if you go back and look at the actual district court record, the photograph that was originally used for summary judgment did have that date stamp of January 12, 2017. And Judge Sweeney, in entering his opinion, used that date to say, what relevance do these photographs have? There's no evidence, there's no foundation that these depict the area of the fall as it existed at the time that Ms. Walden was injured. At best, they just show the area of the store where the fall occurred. Was there a date stamp on the second photo when you sent it? Yes, Your Honor. Well, who altered the second photo to eliminate the date stamp? Your Honor, I believe that the photograph was altered between the district court and here by the plaintiff. I believe that, and if you look at the appendix record, you'll note that while every other page of the appendix has the typewritten docket information from the district court, those photographs, those pages were removed, that information is missing, the page number is written in pencil or pen and inserted back into the record. So I don't know if it was something when the appendix was being compiled or what, but I would submit that the photograph that was before the district court did bear that date stamp, and between here and there, that date stamp has gone missing. That date stamp is what? I'm sorry, what, Your Honor? Could you repeat that sentence, that date stamp is? I said, yes, somewhere between the district court and the appendix that was submitted to this court, that date stamp was removed. And... What did Mrs. Walden say about the photographs in her deposition? In her deposition, Your Honor, and it was noted in our reply brief, I don't believe that her testimony suggests that the photograph was taken at or immediately after the actual incident. In fact, her testimony that was quoted by the plaintiff in their brief says that the photograph simply looks similar, quote, looks similar to the rack that she was perusing at the time of the fall, and that the photographs show an area reasonably close by to where she believed she fell. Her testimony, she admits in her testimony that she did not take any photographs at the scene, her husband did not take any photographs at the scene, and frankly, this entire issue with the photograph, I would argue, is kind of a red herring, because even if the photographs do, even if they were taken shortly after the time of the incident, that's not really what the issue is. The issue is, you know, we have an employee who has testified via an affidavit that she did conduct this inspection five to ten minutes prior to when the fall occurred, and at the point of that inspection, she did not find anything, no debris on the floor. Certainly, we're not arguing that there was no hanger that Ms. Walden slipped on. That's not our argument here today. We would concede for purposes of this argument that there was a hanger that fell on the floor and that she slipped on it. The point is that that five to ten minute window, when we would argue something occurred that caused the hanger to fall to the floor, since it was not there during the inspection, that's what happened. Something happened during that five to ten minutes that resulted in that hanger and potentially other debris on the floor. The point is that Indiana courts are very clear. The Schultz case and the district court that has interpreted that case in Indiana federal courts is very clear that five to ten minute window is simply insufficient to establish constructive notice to a premises owner such as Walmart. The arguments regarding the affidavits, the arguments regarding the photographs, I believe are waived at this point, particularly the arguments regarding the affidavits and their admissibility. There was no motion to strike filed at the district court, and I think the case law in Arboreef shows that those arguments have been waived at this point. And to the extent... Walmart identified three employees with knowledge of the incident and provided affidavits from two. Correct. Do we know what the third employee has said about the condition of the floor on the day of the accident? Is there anything in the record about that third employee? There's nothing in the record regarding that third employee, Your Honor. I believe, if I recall correctly, she's no longer employed by Walmart and was not a key player, I guess, in the investigation of this lawsuit moving forward. I think that the third employee who we did not obtain an affidavit from may have been the one who came and took the hanger and removed it after the fall occurred. So we had someone in a management role to testify via an affidavit about Walmart's policies and procedures, about whether she, as a manager in that role, had any knowledge of actual or constructive notice. She said she didn't. That was Amanda Miller. And we have Tammy Grimes, who was kind of boots on the ground, a person who did conduct that inspection, who did have knowledge of the area of the accident shortly before it occurred, and whose testimony has frankly never been refuted. Even if you believe the plaintiff's arguments that these things were on the floor, something happened that caused Ms. Walden to fall, she slipped on a hanger, there's still nothing to refute the actual affidavit testimony, which is that she did conduct an inspection five to ten minutes before the fall. To find otherwise is really engaging in a great amount of speculation. To adopt plaintiff's argument that you must believe that they were lying simply because there were hangers or other debris on the floor after the inspection occurred, if that were the case, we'd hardly ever see a case on constructive notice. The whole point is that there's an inspection, there's nothing found, something happens at a later time, and the courts have determined that of critical importance is the amount of time that has passed between when that inspection occurred and when the incident happened. There's never been a suggestion in any of the case law I've seen. Explain again to me why you sent those two photographs. How many photographs did you send? There were two photographs and then there were several still images from surveillance tapes that were taken that day, and they were part of the claims file as we received it from Walmart. As part of their investigation, they routinely take photographs. Whether or not they were taken, like I said, the date stamp is January 12th, and there's never been a deposition of a Walmart employee. There's never been discovery. That's one of them is January 12th. Correct. The other one? Does not have a date stamp on it, Your Honor. So we don't know when it was taken. Correct.  And I think it would be a far too... Are there still photographs? Excuse me, Your Honor? Are there still photographs in the security tape? Where are they? They were taken from the surveillance footage of the date of the accident, January 1st, 2017. Unfortunately, they do not depict the area where the actual fall occurred just because of the schematics of the cameras, and it was not captured on surveillance, obviously. And so I guess with that being said, I think the Court is well aware of the case law on actual and constructive notice and the burden that the plaintiff bears in establishing that for purposes of summary judgment, or for purposes of defeating summary judgment, I should say. So for those reasons, Walmart would respectfully request that the well-reasoned decision of the District Court be affirmed and that summary judgment remain granted for Walmart. Thank you very much. Mr. Ayers? Yes, Your Honor. From what I got of that, I'm not sure exactly what the position of Walmart is on the photographs. They're their photographs. They came into the case in their deposition of Mrs. Walden at pages like 59, 60, 61, maybe 69. In her deposition, the photographs were produced by Walmart and said, look at this, look at this. What did you see? Did you see that then? And her answer was, that's what I saw. I was on my back hurting. I looked over on the right of me. That's what I saw, that rack on the right with all that stuff underneath it. The originals, such as they are, of those photographs, of course, are in the original deposition. Why did the date stamp change? Pardon? It didn't change. That's exactly the way they came into evidence in the deposition. I think that's a reproduction or whatever, but it's certainly something Walmart thought was pertinent in the deposition. I said, this is you fell, and is this what you saw at the round rack? And she said, no, it wasn't like that. I was on the other side of it. The round rack on my side of it, once I got around it and fell, then I saw what was beside me underneath the straight racks. And that's her deposition, and that's when the photographs were discovered by us, produced by them, in her deposition. So you're saying the date stamp was gone when you received it? I don't know if there was ever a date stamp. I don't have the original photograph. This court reporter has the original photograph. I never saw a date stamp on it. I didn't think that that stamp on the second photograph was a photographic stamp. I mean, it's not something that, it didn't look to me like something that was put in by the photographic process. Well, I think, regardless of that, I don't think there's a foundation for summary judgment based upon the evidence and the lack of any personal knowledge on the entire... Why didn't you depose any of the employees? They already had given their affidavits. We knew exactly what they were going to say. You can't expect a person who's, well, you can't expect a person whose income is at risk, et cetera, et cetera, to be very helpful. This is summary judgment. I mean, in our practice, that first inadequate summary judgment motion would be a reason to move on, because you have a lack of any evidence other than them saying, I was out there 15 minutes before, but there is no program or schedule or anything else to support that as a Walmart thing. And so what you're left with is, it's kind of like a case where they're saying, well, take care of things. That's all the directive they have is police your areas. Now, police your area of when? The timing on this by the Walmart employee, she said, I was out there 10 minutes before. Well, Ms. Walden had been out there eight, 10 minutes already in that area, and she wasn't there. Thank you very much. Just a minute. I want her to be one. Oh. Yeah. Yeah. Yeah, I think what we need is a reply from each of you regarding the photos, because we're having a problem understanding what happened with the photos. So why don't we give you each 14 days? In terms of that, the original would be with the court, I believe, unless counsel still have the original. Was the deposition filed with the court, or do you still have the original deposition? I don't believe it was filed with the court. Okay. The defendant should have it. It was submitted in support of plaintiff's motion for summary judgment, if that would assist the court now. It does have the docket information from the district court filing, and it's clearly obvious that what was filed at the district court is not what was filed in the appendix here, if you have a copy of that in front of you, if that would be of assistance. If not, I'm happy to put it in as a reply and allow you to review it. We would like it in a reply, and then you take 14 days, and then you take 14 days thereafter. Okay, that's fine. Okay? And we'll send a written order out for you, because this is difficult. You know, we have two completely different stories here. Well, what an exciting day. That's an issue of credibility, I think. We'll take the case under advisement, and thank you both very much. Thank you.